UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lee Michael Pederson,                          File No. 21-cv-02256 (ECT/DTS)

                    Plaintiff,

v.

                                               **OPINION AND ORDER**

Harvey Kesner, Barry Honig, Steven Rubin,
Jane Hsiao, Brian Keller, Opko Health, Inc.,
and Michael Brauser,

                    Defendants.

Lee Michael Pederson, *pro se*.

Joseph T. Dixon III, Alethea M. Huyser, and Devin T. Driscoll, Fredrikson & Byron, P.A.,
Minneapolis, MN; and Brian P. Miller and Samantha J. Kavanaugh, Akerman LLP, Miami,
FL, for Defendants OPKO Health, Inc., Jane Hsiao, and Steven Rubin.

In this case removed from Minnesota state court, pro se Plaintiff Lee Michael
Pederson, a Minnesota attorney, has sued seven out-of-state defendants for their alleged
participation in a fraudulent scheme. This is Pederson's third case in this District arising
from this alleged scheme. His first two cases were dismissed for lack of personal
jurisdiction. The Eighth Circuit affirmed both dismissals.

Here, defendants Steven Rubin, Jane Hsiao, and OPKO Health, Inc. seek dismissal
from the case for lack of personal jurisdiction and Rule 11 sanctions against Pederson.
These motions will be granted. The motion to dismiss will be granted because the Eighth
Circuit decided the personal-jurisdiction question against Pederson in his first and second
cases, and at least the second ruling is preclusive of the personal-jurisdiction issue here. If

that weren't so, the motion would be granted on its merits. The Rule 11 motion will be granted because Pederson should have known better than to bring this third case in Minnesota, if at all.

I

A

*Pederson I.* Pederson brought his first case in Hennepin County District Court in December 2017. Pederson asserted claims for fraud and tortious interference with prospective business advantage against four identified defendants—Phillip Frost, OPKO Health, Inc., Brian Keller, and CoCrystal Pharma, Inc. Pederson also sued "J. Does 1–50." With the consent of all other identified defendants, OPKO Health removed the case to this court, invoking diversity jurisdiction. *See Pederson v. Frost*, No. 17-cv-5580 (WMW/BRT) (D. Minn. filed Dec. 29, 2017) (*Pederson I*), ECF Nos. 1 and 1-1. Defendants moved to dismiss the case for lack of personal jurisdiction. *Pederson I*, ECF No. 59. Overruling Pederson's objections, District Judge Wilhelmina Wright adopted the Report and Recommendation of Magistrate Judge Becky Thorson, granted defendants' motion, and dismissed *Pederson I* on this basis. *Pederson I*, ECF No. 81.

Pederson appealed this ruling, and a concise description of the factual allegations underlying *Pederson I* appears in the Eighth Circuit's opinion affirming the suit's dismissal for lack of personal jurisdiction:

> For years, Pederson served as outside counsel to a California corporation called BioZone. When he first began representing BioZone, he was a resident of California. He later moved to Minnesota, however, and by the time of the alleged fraud,

2

> Pederson was a Minnesota attorney working out of a
> Minnesota office.
>
> According to Pederson's complaint, one of BioZone's co-
> founders, Brian Keller, induced him to continue representing
> the company through repeated promises of either an in-house
> position or increased compensation once the company's
> financial picture improved.  In that regard, Keller sought out
> potential investors, the most promising of which was Phillip
> Frost, CEO of OPKO Health, Inc.  Rather than following
> through on his pledge to invest in BioZone, however, Frost and
> his allies "took control" of the company and began engaging in
> securities fraud.  During this time, Keller and Frost
> manipulated Pederson into continuing his work through more
> false promises.  Pederson eventually discovered the fraud and
> quit.
>
> Nearly all of these events occurred outside Minnesota.  The
> meetings between Pederson, Keller, Frost, and others took
> place in Florida and New Jersey.  Although Pederson alleges
> that he received "hundreds of telephone and email contacts"
> related to BioZone in his Minnesota office, there is no
> allegation that any of the defendants ever resided or set foot in
> Minnesota.

*Pederson v. Frost*, 951 F.3d 977, 978–79 (8th Cir. 2020).  The Eighth Circuit noted also

that the *Pederson I* defendants were citizens of Florida, Delaware, and Georgia—not

Minnesota.  *Id.* at 979 n.2.

It seems fair to say that the Eighth Circuit centered its affirmance of the personal-

jurisdiction-based dismissal of *Pederson I* on two conclusions.  First, the court determined

that the defendants' only Minnesota connection was Pederson—not contacts tending to

show "some broader effort by the defendants to create a connection with Minnesota."  *Id.*

at 980.  As the court observed: "when the only connection between the defendants and the

forum state is the plaintiff himself, they are not enough on their own."  *Id.* at 980.  Second,

the court determined that the holding of *Calder v. Jones*, 465 U.S. 783 (1984), provided no independent basis for personal jurisdiction in Minnesota because, however significant Pederson's Minnesota contacts may have been, the defendants did not "'tether[]' the effect of their actions to Minnesota." 951 F.3d at 981 (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)). The Eighth Circuit subsequently denied Pederson's petition for rehearing and rehearing en banc. *Id.* at 977.

B

*Pederson II.* Pederson filed his second case in this court while his Eighth Circuit appeal was pending in *Pederson I. Pederson v. Frost*, No. 19-cv-1777 (JNE/DTS) (D. Minn. filed July 8, 2019) (*Pederson II*), ECF No. 1. In this second case, Pederson sued three defendants: Phillip Frost, CoCrystal Pharma, Inc., and Daniel Fisher. *Id.* at 1. Pederson asserted claims for breach of fiduciary duty against Frost, tortious interference with a prospective economic advantage against Frost and CoCrystal Pharma, and unjust enrichment and quantum meruit against Fisher. *Id.* ¶¶ 185–211. All of these claims were based on the allegation that Frost and CoCrystal Pharma had misused some $800,000 worth of corporate assets to buy Fisher's silence and prevent Fisher from assisting Pederson with the prosecution of *Pederson I. See id.* ¶¶ 2, 6–7, 10–12, 19, 186–211. *Pederson II* was stayed pending the resolution of the *Pederson I* Eighth Circuit appeal and any petition for a writ of certiorari with the Supreme Court (though Pederson ultimately filed no such petition). *Pederson II*, ECF Nos. 24, 27, 32, 60. After the Eighth Circuit resolved *Pederson I*, this stay was lifted, and the *Pederson II* defendants moved for dismissal and Rule 11 sanctions. *Pederson II*, ECF Nos. 80, 90.

Magistrate Judge David T. Schultz recommended that *Pederson II* be dismissed for lack of personal jurisdiction and that Pederson be sanctioned.  *See Pederson II*, ECF No. 115.  Magistrate Judge Schultz first determined that the question of personal jurisdiction was essentially the same as in *Pederson I*, explaining:

> [Pederson's] Amended Complaint offers no facts that demonstrate any connection between Minnesota and [his] state law claims.  His assertion that Defendants "targeted" him in Minnesota simply recycles the argument that was rejected in *Pederson I* in which he contended his own presence in the state (where he received calls and emails, performed legal services, and suffered harm) established personal jurisdiction over Defendants.

*Id.* at 6.  Magistrate Judge Schultz's Rule 11 recommendation was based on Pederson's failure to "allege[] any new or different suit-related jurisdictional facts that overcome the lack of personal jurisdiction that resulted in the dismissal of *Pederson I*."  *Id.* at 9.  As a sanction, Magistrate Judge Schultz recommended that Pederson be ordered to "pay $5,000 to Frost and $5,000 to Fisher for costs and attorney's fees they incurred" defending *Pederson II.  Id.* at 12.  Magistrate Judge Schultz also recommended that "Pederson be enjoined from filing any other actions in the District of Minnesota against Fisher, Frost, or CoCrystal Pharma based on the same or similar allegations [in *Pederson II*] unless he has first obtained written permission from a judicial officer in this District."  *Id.*  District Judge Joan N. Ericksen adopted Magistrate Judge Schultz's Report and Recommendation over Pederson's objections.  *Pederson II*, ECF No. 126.

Pederson appealed, and the Eighth Circuit affirmed in a relatively brief per curiam order, reasoning:

> We find that Pederson is precluded from relitigating whether his telephone and email contact with, and prior legal representation of, defendants or their agents constituted sufficient minimum contacts to establish personal jurisdiction over them in the District of Minnesota, as this court previously decided they were not. We find that defendants' other contacts with Minnesota--their settlement of a California real estate lawsuit, which allegedly harmed Pederson in Minnesota, and their alleged participation in nationwide securities schemes-- were also insufficient to establish personal jurisdiction. As Pederson does not meaningfully argue the district court's imposition of sanctions under Federal Rule of Civil Procedure 11, he has waived the issue.

*Pederson v. Frost*, No. 21-1260, 2021 WL 6138212, at *1 (8th Cir. Dec. 29, 2021) (per curiam) (citations omitted). As in *Pederson I*, the Eighth Circuit subsequently denied Pederson's petition for rehearing and rehearing en banc. No. 21-1260 (8th Cir. Feb. 8, 2022).

## C

*This Case.* While *Pederson II* was pending before the Eighth Circuit, Pederson brought this case in Hennepin County District Court. *See* Compl. [ECF No. 1-1]. In this suit, Pederson named seven defendants: Harvey Kesner, Barry Honig, Michael Brauser, Steven Rubin, Jane Hsiao, Brian Keller, and Opko Health, Inc. *Id.* at 1. Pederson seems to assert two claims against all defendants: a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and a claim for tortious interference "with a business relationship/prospective economic advantage." *See* Compl. ¶¶ 100–08 (RICO), ¶¶ 118–29 (tortious interference).

Three defendants—Rubin, Hsiao, and Opko Health—removed the case to this court on October 12, 2021. Notice of Removal [ECF No. 1] at 1.[1] Removal was premised on diversity of citizenship (notwithstanding Pederson's assertion of a RICO claim). *Id.* ¶¶ 1, 13. As defendants point out in their Notice of Removal, Pederson alleges that he is a Minnesota citizen, that the individual defendants are citizens of either Florida or California, and that OPKO Health is a Delaware corporation with a principal place of business in Florida. *Id.*; *see* Compl. ¶¶ 48, 49–54, 55, 116–17, 130. And Pederson seeks $5.1 million in damages. Compl. ¶ 130. After removal, Rubin, Hsiao, and Opko Health filed a motion to dismiss for lack of personal jurisdiction, ECF No. 10, and a motion for Rule 11 sanctions, ECF No. 17. Pederson responded by filing his now-operative Amended Complaint. ECF No. 26. And Rubin, Hsiao, and Opko Health filed a follow-on motion to dismiss the Amended Complaint. ECF No. 32. Before reaching the merits of these motions, it is helpful to summarize two aspects of the Amended Complaint: its substantive allegations and its personal-jurisdiction allegations.

The Amended Complaint's substantive allegations confirm that this case is just like

---

[1]    The other four defendants (Kesner, Honig, Brauser, and Keller) have not appeared, and no certificate or other proof has been filed or submitted to show that these defendants have been served with process. The uncertainty regarding these defendants' status poses no barrier to removal, however. The requirement that all defendants join in or consent to removal applies only to "defendants who have been properly joined and served." 28 U.S.C. § 1446(b)(2)(A). In other words, if Kesner, Honig, Brauser, or Keller had not been properly joined and served when Rubin, Hsiao, and Opko Health removed the case, their consent to removal was not required. If, on the other hand, Kesner, Honig, Brauser, or Keller had been properly served, Pederson did not timely seek remand, and it seems settled that a violation of the unanimity requirement is procedural—not jurisdictional—meaning Pederson has waived this issue. *See, e.g.*, *Taylor v. Medtronic, Inc.*, 15 F.4th 148, 151 n.2 (2d Cir. 2021); *Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 455 (7th Cir. 2005).

*Pederson II*.  Here, as in *Pederson II*, Pederson alleges that that the "Frost-Honig gang conducted numerous securities frauds at public companies over the time period from about 2011 to 2018," Am. Compl. ¶ 1, that "Pederson was outside counsel to BioZone when the Frost-Honig gang fraudulently took control of BioZone," *id.* ¶ 6, that this fraud harmed Pederson, *id.*, that essentially these and related facts formed the basis for *Pederson I*, *see id.* ¶ 13, that "Pederson and Fisher had a general agreement to work together" in support of *Pederson I*, *id.* ¶¶ 156–60, that Fisher was bribed as part of a litigation settlement that "netted [him] an amount more than $800,000 over the amount Fisher was seeking in damages in his lawsuit[]" and that required Fisher not to cooperate with Pederson in the prosecution of *Pederson I*, *id.* ¶¶ 161–71, and that Fisher's bribery injured Pederson in connection with his prosecution of *Pederson I*, *id.* ¶ 14.  If these allegations left some questions remaining about the sameness between *Pederson II* and this case, Pederson answers them explicitly in his Amended Complaint when he alleges: "The bribery of Dan Fisher by the Frost gang comprises the nucleus of operative facts in both *Pederson II* and *Pederson III*."  *Id.* ¶ 19.1; *see also id.* ¶ 47 (same).  Pederson says the cases are so identical that they "qualify as related cases and are eligible for consolidation under FRCP 42."  *Id.* ¶ 51.  In other words, had the Eighth Circuit reversed and remanded in *Pederson II*, it seems safe to assume that Pederson would have sought consolidation of *Pederson II* and this case.

Like its substantive allegations, the Amended Complaint's personal jurisdiction allegations also track the same theory advanced in *Pederson II*.  Here, as in *Pederson II*, no defendant is a citizen of Minnesota.  *Id.* ¶¶ 65–69, 72.  As in *Pederson II*, no defendant

is alleged to have taken any claim-generating activity in Minnesota. *Id.* ¶¶ 90–91.[2] Instead, just as in *Pederson II*, Pederson alleges that defendants participated in a "nationwide securities fraud enterprise" that targeted and damaged Pederson in Minnesota, and that defendants' "bribery of Fisher" was intended to damage Pederson in Minnesota. *Id.* ¶¶ 90–96. The Amended Complaint's defendant-specific allegations confirm Pederson's jurisdiction theory—*i.e.*, that each defendant acted outside Minnesota in ways that harmed Pederson in Minnesota. *See id.* ¶¶ 120–26 (Rubin), ¶¶ 127–33 (Hsiao), 140–43 (Opko Health). Pederson confirms this understanding of his personal-jurisdiction theory in a summary paragraph in the Amended Complaint:

> The acts of the Defendants that form the basis of this complaint: (a) are connected to Minnesota because they are all directly related to a nationwide securities fraud enterprise (NSFE) involving the Defendants and Minnesota; (b) are connected to Minnesota because the Defendants targeted Pederson in Minnesota for the purposes of concealing the acts of the nationwide securities fraud enterprise; and (c) are connected to Minnesota because the Defendants targeted Pederson in Minnesota for the purposes of interfering with and damaging Pederson's Minnesota court case against Frost and others.

*Id.* ¶ 91.

---

[2] Pederson says he wasn't the only one harm by the nationwide enterprise. He alleges that the enterprise "fraudulently promoted securities in Minnesota," and that "[m]embers of the enterprise sold securities at artificially inflated prices to Minnesota investors." Am. Compl. ¶¶ 100–01; *see also id.* ¶ 89 (alleging that "Defendants transacted (illegal) business within Minnesota."). But Pederson asserts no claim on behalf of "Minnesota investors."

II

Because this case and *Pederson II* are identical in all relevant respects, it seems fair to ask whether the Eighth Circuit's affirmance of the dismissal of *Pederson II* for lack of personal jurisdiction precludes consideration of that issue here. Though this issue was not briefed, it was raised and discussed at the hearing, and regardless "courts may invoke the doctrines of *res judicata* and collateral estoppel *sua sponte*." *Carter v. Clark*, No. 14-cv-98 (MJD/LIB), 2015 WL 505743, at *4 (D. Minn. Feb. 6, 2015) (collecting cases), *aff'd*, 622 F. App'x 607 (8th Cir. 2015).

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "The law of the forum that rendered the first judgment controls the res judicata analysis." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) (quoting *Laase v. Cnty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011)). Here, that's the United States District Court for the District of Minnesota exercising its diversity jurisdiction and applying Minnesota law, affirmed by the Eighth Circuit. "As a matter of federal common law, we must give that federal diversity judgment the same claim-preclusive effect that [Minnesota] state courts would give to a state court judgment." *Id.* (citing *Semtek Int'l., Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)); *see also Taylor*, 553 U.S. at 891 n.4; *Ideker v. PPG Indus., Inc.*, 788 F.3d 849, 852 (8th Cir. 2015). Accordingly, Minnesota law applies.

Under Minnesota law, collateral estoppel precludes an issue's reconsideration if:

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Kaiser v. N. States Power Co.*, 353 N.W.2d 899, 902 (Minn. 1984) (citation omitted), *abrogated on other grounds by Tyroll v. Priv. Label Chems., Inc.*, 505 N.W.2d 54 (Minn. 1993); *see also Peschong v. Children's Healthcare*, 917 F.3d 656, 658 (8th Cir. 2019) (same); *Heine v. Simon*, 702 N.W.2d 752, 761 (Minn. 2005) (same elements). Minnesota law does not require "mutuality" for collateral estoppel to apply. *Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 650 (Minn. 1990) ("Even though a defendant in the proceeding before the court was not a party to the earlier proceeding, Minnesota permits a defendant to invoke collateral estoppel in the subsequent litigation commenced by a plaintiff who also had been the claimant in the earlier proceeding provided [the] four requirements have been established . . . ."); *see also Helgeson Bros. P'ship v. Cnty. of Douglas*, No. A10-100, 2010 WL 3632509, at *6 (Minn. Ct. App. Sept. 21, 2010) ("Res judicata applies when 'the earlier claim involved the same parties or their privies,' but collateral estoppel applies, as here, when the estopped party—Helgeson—was a party to the prior adjudication.") (citation omitted). Issue preclusion in Minnesota is not "rigidly applied," rather, "the focus is on whether its application would work an injustice on the party against whom estoppel is urged." *Falgren v. Bd. of Teaching*, 545 N.W.2d 901, 905 (Minn. 1996) (quoting *Johnson v. Consol. Freightways, Inc.*, 420 N.W.2d 608, 613–14 (Minn. 1988)).

These elements are satisfied here. (1) In every legal and practical sense, the personal-jurisdiction issue in this case is the same personal-jurisdiction issue decided in *Pederson II*. The issue here is whether a federal district court in Minnesota may exercise personal jurisdiction over "members, associates and entities of . . . the Frost-Honig gang" who have no direct connection to Minnesota but who are alleged to have engaged in conduct outside Minnesota that caused harm in Minnesota, including securities-law violations and Fisher's "bribery." *See* Am. Compl. ¶¶ 1, 68, 69, 72, 90–91, 97–99, 120–33, 140–43, 172–94. The Eighth Circuit decided that very issue in *Pederson II*: "We find that defendants' other contacts with Minnesota--their settlement of a California real estate lawsuit, which allegedly harmed Pederson in Minnesota, and their alleged participation in nationwide securities schemes--were also insufficient to establish personal jurisdiction." 2021 WL 6138212 at *1 (citations omitted). If Pederson espoused an alternative personal-jurisdiction theory here, it might make a difference that the defendants named in this case were not sued in *Pederson II*. Personal jurisdiction is, after all "personal," meaning each defendant's particular circumstances ordinarily must be analyzed to resolve the issue. That individualized assessment is unnecessary here because Pederson's personal-jurisdiction theory in this case is identical to the theory he advanced in *Pederson II*, and that theory doesn't depend at all on any defendant's unique Minnesota contacts. The theory concerns members of the "Frost-Hong gang" altogether. It also might have been different had Pederson alleged facts in this case showing that personal-jurisdiction-related facts had changed since *Pederson II*. *See Pohlmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112–13 (8th Cir. 1999). But Pederson's Amended Complaint includes no such allegations.

(2) Though dismissals for lack of personal jurisdiction are not "on the merits" in the usual sense, *see Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1012 (D. Minn. 2008) (explaining that dismissal for lack of personal jurisdiction "is always without prejudice; such a dismissal implies nothing about the merits of the dismissed claims because the court is not empowered to address the merits of the dispute"); *Henricksen v. Henricksen*, No. C3-02-1104, 2003 WL 347177, at *2 (Minn. Ct. App. Feb. 18, 2003) ("A dismissal for lack of personal jurisdiction does not constitute a final judgment on the merits."), "[m]any cases have given . . . preclusive effect to rulings on personal jurisdiction as well as other jurisdiction issues," *Pohlmann*, 176 F.3d at 1112 (collecting cases). The question here is whether Minnesota gives preclusive effect to a personal jurisdiction ruling. *Pederson I* was a diversity case, so when it "[found] that Pederson [was] precluded from relitigating whether his telephone and email contact with, and prior legal representation of, defendants or their agents constituted sufficient minimum contacts to establish personal jurisdiction over them in the District of Minnesota," the Eighth Circuit in *Pederson II* implicitly determined that Minnesota takes this approach. 2021 WL 6138212, at *1. Minnesota cases support this determination. In *Kheyre v. M & S Properties LLC*, the Minnesota Court of Appeals applied collateral estoppel to preclude relitigation of a jurisdictional standing issue. No. A16-1461, 2017 WL 2535708, at **5–6 (Minn. Ct. App. June 12, 2017). The Court of Appeals acknowledged that "a dismissal based on lack of standing is not a final judgment on the merits" and that, as a result, "res judicata and collateral estoppel do not apply in a technical sense." *Id.* at *5 (citations omitted). The court observed, however: "The Minnesota Supreme Court has stated that the 'underlying principle that an

adjudication on the merits of an issue is conclusive, and should not be relitigated, clearly applies' *even if* collateral estoppel does not apply in a technical sense." *Id.* at *6 (quoting *Loo v. Loo*, 520 N.W.2d 740, 743–44 (Minn. 1994)); *see also Saudi Am. Bank v. Azhari*, 460 N.W.2d 90, 93 (Minn. Ct. App. 1990) (applying collateral estoppel to preclude relitigation of a forum non conveniens issue). Persuasive cases support this conclusion. *E.g.*, *Smith v. Ghana Com. Bank, Ltd.*, No. 13-cv-1010 (DWF/JJK), 2013 WL 12074959, at *5 (D. Minn. Aug. 8, 2013) ("Generally, the doctrine of collateral estoppel applies to orders after a final judgment on the merits; however, it is also applicable to a court's prior decision that it lacks personal jurisdiction over a party.") (citations omitted), *report and recommendation adopted*, 2013 WL 12074961 (D. Minn. Oct. 8, 2013); *Womack v. Moulton Coll.*, No. 8:17cv273, 2017 WL 3524667, at *3 (D. Neb. Aug. 16, 2017) (applying collateral estoppel to preclude relitigation of a personal jurisdiction issue under Nebraska law).

The third and fourth elements don't require much discussion. (3) Pederson would be estopped here, and he was the plaintiff in *Pederson II*. (4) Pederson (obviously) was given a full and fair opportunity to be heard in *Pederson II* regarding personal jurisdiction. Magistrate Judge Schultz held a hearing on the question (and others) and issued a thorough Report and Recommendation. *Pederson II*, ECF Nos. 113, 115. Pederson lodged objections to the Report and Recommendation. *Pederson II*, ECF No. 119. These events were followed by Pederson's Eighth Circuit appeal and his post-decision petition for rehearing and rehearing en banc. It's difficult to imagine a litigant having a fuller opportunity to litigate an issue, and Pederson here identifies nothing about that litigation

process that might have been unfair in the relevant sense. *See State v. Joseph*, 636 N.W.2d 322, 328 (Minn. 2001) ("The question of whether a party had a full and fair opportunity to litigate a matter generally focuses on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties.") (quotation omitted).

The bottom line, then, is that collateral estoppel precludes Pederson from relitigating here whether there is personal jurisdiction over the defendants in their capacities as alleged members of the "Frost-Honig gang." For this reason, Pederson's Amended Complaint must be dismissed.

## III

If collateral estoppel weren't the problem, the Amended Complaint plainly would have to be dismissed on the personal-jurisdiction issue's merits. Begin with the record concerning this issue. Defendants each submitted a declaration. OPKO Health (by its Associate General Counsel and Secretary) attests that it is a Delaware corporation with its principal place of business is in Florida, that it is not registered to do business in Minnesota, that it has no offices, agents, employees, or bank accounts in Minnesota, and that it owns no real or personal property in Minnesota. ECF No. 35 ¶¶ 2, 4–10. Rubin and Hsiao testify that they are Executive Vice President, Administration and Vice Chairman and Chief Technology Officer, respectively, of OPKO Health; they have never traveled to Minnesota in their capacities in those positions; they are residents of Florida; they have never resided or owned any real property in Minnesota; they do not maintain bank accounts in Minnesota;

they have never had a Minnesota driver's license; they have never been registered to vote in Minnesota; they do not regularly transact or solicit business in Minnesota; and they have never met with Pederson in Minnesota.  ECF No. 36 ¶¶ 2–10; ECF No. 37 ¶¶ 2–10.

Pederson submitted a declaration too.  It includes a series of paragraphs captioned "Part Four: Frost gang (Illegal) Operations in Minnesota," in which Pederson avers there were certain numbers of shares purchased of certain stocks, so "[a]ssuming that [the stocks] were bought in Minnesota proportionally to Minnesota's share of US GDP, the odds that no Minnesotan bought a share of stock in those" transactions are extremely low or "essentially zero."  ECF No. 43 at 4 ¶¶ 13–14.  Pederson makes a parallel statement, based on Minnesota's share of the national GDP, about investors who received Notice Packets "in the Opko class action lawsuit," concluding that "the odds that no Minnesotan invested in Opko during the class period" are very low or "essentially zero."  *Id.* ¶ 15.  Pederson further testifies that "[t]he Frost gang acted as a conspiracy to disseminate false and/or misleading information through national media," including "the dissemination of a misleading article published in *Forbes* magazine," which "has a U.S. readership of about 6.3 million persons" and "includes significant readership in Minnesota."  *Id.* ¶ 16 (footnotes omitted).

"When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists."  *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citations omitted).  "To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant."  *Id.* (citations omitted).  A prima facie

showing requires a plaintiff to plead facts sufficient "to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (cleaned up). "But where, as here, the parties submit affidavits to bolster their positions on the motion, and the district court relies on the evidence, the motion is in substance one for summary judgment." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (citation omitted). At the summary-judgment stage, a case should not be dismissed for lack of personal jurisdiction "if the evidence, viewed in the light most favorable to [the plaintiff], is sufficient to support a conclusion that the exercise of personal jurisdiction over [the defendant] is proper." *Id.* (citations omitted).

For the exercise of personal jurisdiction to be proper in a diversity case, it must comport with both the forum state's long-arm statute and due process. *Id.*; *see also* Fed. R. Civ. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Because Minnesota's long-arm statute, Minn. Stat. § 543.19, is "coextensive with constitutional limits," this two-part issue boils down to one: whether the exercise of personal jurisdiction comports with due process. *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006); *see also Rilley v. MoneyMutual, LLC*, 884 N.W.2d 321, 327 (Minn. 2016). Due process requires that a defendant have sufficient "minimum contacts" with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG*, 571 U.S. at 126 (cleaned up). This means "actions by the defendant[s]" themselves must "create a substantial connection with the forum State" and provide "fair warning" to the defendants that they may be subject to jurisdiction there.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985) (cleaned up).  The "fair warning" requirement will be met if defendants have "'purposefully directed' [their] activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *Id.* at 472–73 (citations omitted).

Our Eighth Circuit Court of Appeals has identified five factors that district courts are to consider in determining whether there is personal jurisdiction over a defendant: (1) the nature and quality of contacts with the forum state; (2) the quantity of those contacts; (3) the relationship between the cause of action and the contacts; (4) the state's interest in providing a forum for its residents; and (5) the convenience to the parties.  *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (citation omitted).  The first three factors are of primary importance, and the remaining two are secondary.  *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).  "[T]he better understanding of the Eighth Circuit's statements that the last two factors are 'not determinative' or 'not dispositive' is that those factors cannot establish jurisdiction when there are not otherwise minimum contacts with the forum."  *Blue Cross & Blue Shield of N.C. v. Rite Aid Corp.*, 519 F. Supp. 3d 522, 534 n.3 (D. Minn. 2021) (tracing history of Eighth Circuit's personal jurisdiction factors).

The contacts Pederson identifies lack a nature, quality, or quantity favoring the exercise of personal jurisdiction over the defendants.[3]  Pederson's assertions that the

---

[3]    Pederson argues that the defendants are subject to general personal jurisdiction in Minnesota.  ECF No. 42 at 5 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)); *see also id.* at 15–16.  This suggestion is not well-considered.  General jurisdiction is appropriate when a defendant is "at home" in the forum state.  *Daimler AG*, 571 U.S. at

defendants participated in a nationwide securities-fraud scheme that injured him and Minnesota investors carry negligible weight. No allegations connect the nationwide scheme specifically to Minnesota. In other words, Pederson identifies no particular Minnesota contact that might be at issue here. Nor does he attempt to quantify some number of personal-jurisdiction-related contacts. Though Pederson alleges that Fisher's alleged bribery injured him here (by hindering his prosecution of *Pederson I*), this in-Minnesota injury resulted from Pederson's presence in Minnesota and the fact that he chose to file *Pederson I* here, not from any defendant's purposeful Minnesota contacts. *Walden v. Fiore*, 571 U.S. 277, 284, 285 (2014) (noting that "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State" and that "the plaintiff cannot be the only link between the defendant and the forum"). And Pederson's allegation that Minnesota investors were damaged seems irrelevant. Pederson asserts no claim on their behalf, and in the context of specific personal jurisdiction, jurisdiction-triggering contacts must bear some relationship to a plaintiff's claims. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, ___ U.S. ___, 141 S. Ct. 1017, 1025 (2021). Pederson cites *Calder v. Jones*, 465 U.S. 783 (1984), but the case doesn't excuse him from identifying acts "uniquely or expressly aimed at the forum state." *Arden*, 614 F.3d at 796. Pederson's claims simply have no relation to the defendants' Minnesota contacts. As far as the record shows, the defendants have no Minnesota contacts. The Eighth Circuit's fourth and fifth factors can't change things, *Rite Aid Corp.*, 519 F. Supp. 3d at 534 n.3, and wouldn't if

---

127 (quotation omitted). In his Amended Complaint, Pederson alleges that the defendants are at home in states other than Minnesota. Am. Compl. ¶¶ 65–70, 72.

they could. Pederson identifies no feature of this case that might give Minnesota some particular interest in providing a forum. And though Minnesota would provide a more convenient forum for Pederson, there is no question it would be quite inconvenient for each of the defendants.

IV

Under Rule 11(b), an attorney or unrepresented party's presentation of a "pleading, written motion, or other paper" certifies that "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(1)–(2). "Rule 11 requires that an attorney conduct a reasonable inquiry of the factual and legal basis for a claim before filing." *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003). In other words, the rule requires litigants to "stop-and-think" before making legal or factual contentions in pleadings and prescribes sanctions for violations of its obligations. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. "Rule 11's main purpose is to deter baseless filings," and it "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017) (cleaned up). In assessing whether a Rule 11 violation has occurred, a court "must determine whether a reasonable and competent attorney would believe in the merit of an argument." *Coonts*, 316 F.3d at 753 (cleaned up).

On finding a violation, a court may order "nonmonetary directives" and, "if imposed on motion and warranted for effective deterrence, . . . payment to the movant part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).[4]

Pederson pretty clearly violated Rules 11(b)(1) and (2) by filing this lawsuit and certainly by continuing to push his personal-jurisdiction theory after the Eighth Circuit rejected it in *Pederson II*. The lawsuit itself lacks any evident purpose not served by *Pederson II*. Its substantive factual allegations are identical. It follows that there is no reason the defendants in this case could not simply have been added to *Pederson II* had the Eighth Circuit reversed and remanded. If there is another point to this lawsuit, Pederson hasn't identified it. Pederson's decision to supplement his Amended Complaint with 2,212 pages of exhibits and "incorporate[] [them] by reference in their entirety into [the] Amended Complaint," Am. Compl. ¶ 87.1, would be bad enough, *see* Fed. R. Civ. P. 8(a). That this decision disregards—really, flouts—Magistrate Judge Schultz's admonition that the tactic held "little or no legitimate litigation purpose" just makes things worse. *Pederson II*, ECF No. 115 at 12. Pederson's decision to press ahead with the same personal-jurisdiction position here after it was rejected by the Eighth Circuit is bewildering.

Pederson's arguments against Rule 11 sanctions are not persuasive. He seems to suggest that the Eighth Circuit (and the district court before it) erred in *Pederson II* because they did not consider his allegations regarding Fisher's bribery. *See* ECF No. 42 at 11–12,

---

[4]    Defendants complied with Rule 11(c)(2)'s pre-filing notice requirement. ECF No. 20 ¶¶ 6–7; *see also* ECF No. 20-1 at 33, 72.

32–33, 36, 40; ECF No. 30 at 18 & n.16.  This is neither a reasonable characterization of the Eighth Circuit's decision nor a sensible legal position.  The Eighth Circuit's order explicitly references "defendants' . . . settlement of a California real estate lawsuit, which allegedly harmed Pederson in Minnesota," but concluded Pederson's allegations concerning the settlement were "insufficient to establish personal jurisdiction." *Pederson II*, 2021 WL 6138212, at \*1.  The settlement of the California lawsuit is where Pederson alleges the bribery occurred.  In other words, the Eighth Circuit explicitly considered Pederson's bribery allegations.  Even if that weren't so, a sensible lawyer would not advocate that a federal district court reject controlling circuit precedent, implicitly or otherwise.  (Remember, Pederson alleges that this case and *Pederson II* "share the same common nucleus of operative facts, namely, the bribery of Dan Fisher in 2017-2018."  Am. Compl. ¶ 47.)  Pederson says he had (and has) a good-faith belief that personal jurisdiction may be exercised here.  ECF No. 30 at 15, 17.  But, as Magistrate Judge Schultz made clear in his Report and Recommendation, the Rule 11 standard is objective, not subjective.  *See Pederson II*, ECF No. 115 at 10–11; *Adams*, 863 F.3d at 1077 (recognizing that the Rule 11 question is "whether the attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court"); *Miller v. Bittner*, 985 F.2d 935, 938, 939 (8th Cir. 1993) (referring to "objective reasonableness" standard and "whether a reasonable and competent attorney would believe in the merit of an argument").  The bottom line is that Pederson's allegiance to the cause underlying his (questionable) claims prevented him from exercising sound judgment and engaging in reasonable, Rule 11-compliant advocacy regarding the personal-jurisdiction question.

It is difficult to predict what sanction "suffices to deter repetition of the conduct." Fed. R. Civ. P. 11(b)(4). It seems reasonable to question whether the *Pederson II* sanctions—the $10,000 aggregate payment for the defendants' costs and attorneys' fees and the injunction forbidding Pederson "from filing any other actions in the District of Minnesota against Fisher, Frost, or CoCrystal Pharma based on the same or similar allegations as those in [*Pederson II*]"—had or are having their intended effect. Though the hearing on these motions occurred after the Eighth Circuit resolved *Pederson II*, Pederson indicated then that he had not yet paid the monetary sanctions ordered in that case, and he volunteered no information or plan regarding when or how he might satisfy that obligation. It also seems reasonable to question whether Pederson's filing of this case violated the spirit of *Pederson II*'s injunction. True enough, he didn't sue Fisher, Frost, or CoCrystal Pharma, and he filed the case, not in the District of Minnesota, but in Minnesota state court. In other words, Pederson did not violate the letter of the injunction. At the same time, however, Pederson *alleges affirmatively* that this case and *Pederson II* arise from the same operative facts and deserve to be consolidated. And it would have been at least naïve— and more likely willfully blind—for Pederson to believe that this case wouldn't be removed here.

Based on these sanction-specific considerations, I conclude that the following next steps make the best legal and practical sense: (1) Rubin, Hsiao, and OPKO Health will be ordered to file by not later than Friday, May 20, 2022, an affidavit and appropriate supporting documentation showing their attorneys' fees and costs incurred in defense of this action. As part of that submission, defendants' counsel will be ordered to provide an

update regarding the status of Pederson's compliance with the monetary sanctions ordered in *Pederson II*.  (2) Pederson may file a responsive brief by not later than Friday, May 27, 2022, limited to addressing (a) the reasonableness of the defendants' attorneys' fees and costs and (b) the status of his compliance with the monetary sanctions ordered in *Pederson II*.  Any responsive brief shall not exceed 6,000 words, and Pederson shall file a certificate of compliance in the form prescribed by LR 7.1(f)(2).  (3) These submissions will be reviewed, and it will be determined promptly whether a hearing will be scheduled to address any outstanding questions concerning an appropriate sanction or sanctions.

## V

As noted, Kesner, Honig, Brauser, and Keller have not appeared, and no certificate or other proof has been filed or submitted to show that these defendants have been served with process.  Federal Rule of Civil Procedure 4(m) requires that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice as against defendant or order that service be made within a specified time."  More than 90 days have elapsed since Pederson filed his Amended Complaint.  Therefore, Pederson will be ordered to show good cause for the failure to serve these defendants through an appropriate submission filed by not later than Friday, May 27, 2022.  Fed. R. Civ. P. 4(m).  If Pederson fails to show good cause, this action will be dismissed without prejudice as to these defendants.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.    Defendants Rubin, Hsiao, and OPKO Health, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 32] is **GRANTED,** and the claims against those Defendants are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

2.    Defendants Rubin, Hsiao, and OPKO Health, Inc.'s Motion for Sanctions [ECF No. 17] is **GRANTED**.

3.    Defendants Rubin, Hsiao, and OPKO Health, Inc. shall submit an affidavit and supporting evidence showing their reasonable attorneys' fees and other expenses resulting from the Rule 11 violation on or before **May 20, 2022**.

4.    Plaintiff Lee Michael Pederson may file a responsive brief by not later than Friday, May 27, 2022, limited to addressing (a) the reasonableness of the defendants' attorneys' fees and costs and (b) the status of his compliance with the monetary sanctions ordered in *Pederson II*.  Any responsive brief shall not exceed 6,000 words, and Pederson shall file a certificate of compliance in the form prescribed by LR 7.1(f)(2).

5.    Plaintiff Lee Michael Pederson shall show good cause for the failure to serve defendants Harvey Kesner, Barry Honig, Michael Brauser, and Brian Keller through an appropriate submission filed by not later than Friday, May 27, 2022.  If Pederson fails to show good cause, this action will be dismissed without prejudice as to these defendants.

Dated: May 10, 2022                         s/ Eric C. Tostrud
                                            Eric C. Tostrud
                                            United States District Court