UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Lee Michael Pederson, | File No. 21-cv-02256 (ECT/DTS) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Harvey Kesner, Barry Honig, Steven Rubin, Jane Hsiao, Brian Keller, Opko Health, Inc., and Michael Brauser, | |
| Defendants. | |

Lee Michael Pederson, *pro se*.

Joseph T. Dixon III, Alethea M. Huyser, and Devin T. Driscoll, Fredrikson & Byron, P.A., Minneapolis, MN; and Brian P. Miller and Samantha J. Kavanaugh, King & Spalding LLP, Miami, FL, for Defendants OPKO Health, Inc., Jane Hsiao, and Steven Rubin.

A prior order entered in this case granted motions filed by three of the Defendants—Steven Rubin, Jane Hsiao, and OPKO Health, Inc.—to dismiss for lack of personal jurisdiction and for Rule 11 sanctions against pro se Plaintiff Lee Michael Pederson. *Pederson v. Kesner*, No. 21-cv-02256 (ECT/DTS), 2022 WL 2163776 (D. Minn. May 10, 2022) (*Pederson III*). That order left two issues open for further adjudication. The first issue is the nature of Rule 11 sanctions to be imposed on Pederson. The second is whether Pederson has shown cause for his failure to serve the other Defendants—Harvey Kesner, Barry Honig, Michael Brauser, and Brian Keller—such that Pederson should be given more time to do so. With respect to the first issue, the most appropriate Rule 11 sanction includes (a) an order restricting Pederson from prosecuting new cases in this District against these

Defendants or concerning the subject matter of this case without representation or prior court authorization and (b) an award of attorneys' fees and costs incurred by Defendants in the amount of $20,000.  Regarding the second issue, Pederson will not be given more time in which to serve the unserved Defendants, meaning this case will be dismissed without prejudice as to them.

I

A

Begin with a brief recap concerning the Rule 11 sanctions issue.  In the prior order, I found that Pederson violated Rules 11(b)(1) and (2) by filing this lawsuit and by continuing to push his personal-jurisdiction theory in this case after the Eighth Circuit rejected it in *Pederson v. Frost*, No. 21-1260, 2021 WL 6138212, at *1 (8th Cir. Dec. 29, 2021) (per curiam) ("*Pederson II*").  See *Pederson III*, 2022 WL 2163776, at **8–9.[1]  I determined, after addressing Pederson's arguments and finding them unpersuasive, that the imposition of Rule 11 sanctions is warranted.  *Pederson III*, 2022 WL 2163776, at *9.  I also questioned whether the combination of a filing restriction and $10,000 aggregate sanction imposed on Pederson in *Pederson II* had been sufficient to deter repetition of the sanction-worthy conduct, *id.*, prompting the need to consider a more serious sanction here. Though I did not settle on a specific form or forms of a sanction, I ordered Defendants Rubin, Hsiao, and OPKO Health to file an affidavit and appropriate supporting

---

[1] Pederson brought his first case (*Pederson I*) in December 2017, and it concerned the same basic transactions that are the subject of *Pederson II* and this case.  2022 WL 2163776 at **1–2.  The Eighth Circuit affirmed the personal-jurisdiction-based dismissal of *Pederson I*.  See *Pederson v. Frost*, 951 F.3d 977 (8th Cir. 2020).

2

documentation showing their attorneys' fees and costs incurred in defense of this action along with an update regarding the status of Pederson's compliance with the monetary sanctions ordered in *Pederson II*. Pederson was given the opportunity to address the reasonableness of Defendants' attorney fees and costs and to address the status of his compliance with the *Pederson II* sanctions order. The remaining issue, then, is what sanction or sanctions to impose.

A sanction imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "The primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 747 (8th Cir. 2018) (cleaned up); *see also Sharma v. Crosscode, Inc.*, No. 21-cv-01766 (SRN/BRT), 2022 WL 816555, at *17 (D. Minn. Mar. 17, 2022); *Brown v. Ameriprise Fin. Servs., Inc.*, 276 F.R.D. 599, 606–07 (D. Minn. 2011). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4); *see also* Fed. R. Civ. P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.").

Rubin, Hsiao, and OPKO Health advocate for the imposition of two sanctions: (1) "a broad restriction on Pederson's ability to file matters in the District of Minnesota[,]" ECF No. 50 at 4; and (2) an order requiring payment of their attorneys' fees and costs in

3

the amount of $124,670, *see id.* at 1–2; *see also* Third Dixon Decl. [ECF No. 51] ¶ 7 (stating that Defendants incurred $44,144.00 in attorneys' fees and $1,204.00 in costs from Fredrikson and Byron, P.A); Miller Decl. [ECF No. 53] ¶ 8 (stating that Defendants incurred $78,199.00 in attorneys' fees and $1,123.48 in costs from Akerman LLP). Rubin, Hsiao, and OPKO Health represent, and submit evidence showing, that Pederson has taken no steps to pay the $10,000 aggregate sanction awarded in *Pederson II*. *See* ECF No. 50 at 2–3.

Pederson does not address the motion's filing-restriction aspect at all. He seems to advance two arguments in opposition to an attorneys' fees award. First, Pederson points out that he petitioned for a writ of certiorari to the United States Supreme Court in *Pederson II*, implying that the Eighth Circuit's personal-jurisdiction ruling there (which I found to be preclusive of Pederson's claims in this case) is at risk of reversal and that it would be premature to rule on the sanctions issue here. *See* ECF No. 58 at 1–2. Second, Pederson argues that Rubin, Hsiao, and OPKO Health's claimed attorneys' fees are not reasonable because their motions to dismiss and for Rule 11 sanctions "have not advanced this case one iota." ECF No. 58 at 2. In Pederson's view, because the personal-jurisdiction issues in this case are "identical" to the personal-jurisdiction issues in *Pederson II*, Rubin, Hsiao, and OPKO Health should have agreed to stay this case pending the outcome in *Pederson II*. Pederson also asserts that the motions to dismiss and for sanctions were intended "to drive up Pederson's costs and sap Pederson's energies away from his investigations and efforts to" prosecute *Pederson II* and this case. ECF No. 58 at 6. Pederson's challenge to the attorneys'-fees aspect of the Rule 11 motion is fairly described as all-or-nothing in the

sense that Pederson does not challenge any particular aspect of the law firms' submissions. He does not, for example, challenge the claimed hourly rates' reasonableness. Nor does he contest specific time entries. Pederson agrees that he has not paid any part of the sanction awarded in *Pederson II*. *See* ECF No. 58 at 7.² Pederson represents that he "has no assets or money left." *Id.* at 7, ¶ 3.

B

This is a somewhat unusual case where the decision to impose a filing restriction as a Rule 11 sanction seems straightforward and noncontroversial. A federal court "may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process." *In re Tyler*, 839 F.2d 1290, 1292–93 (8th Cir. 1988) (quotation and citation omitted). A filing restriction must be narrowly tailored to fit the circumstances it is intended to address. *In re Pointer*, 345 Fed. App'x 204, 205 (8th Cir. 2009).

Here, as in *Pederson II*, Pederson does not address the question directly. In other words, it's not clear that Pederson opposes the imposition of a filing restriction. The lack of opposition seems sufficient justification alone to impose the restriction. *See Pederson II*, 2021 WL 6138212, at *1 (concluding that Pederson's failure to meaningfully argue the imposition of sanctions meant he waived the issue).

---

²     Pederson refers to "the $4,000 sanction" awarded to defendant Daniel Fisher in *Pederson II*. This is not correct. The court in *Pederson II* awarded sanctions of "$5,000 to Frost and $5,000 to Fisher for costs and attorney's fees they incurred in" defending that case. *See Pederson II*, ECF Nos. 115, 126.

Regardless, a filing restriction is justified on its merits. *See Munt v. Schnell*, No. 19-cv-0056 (JNE/HB), 2020 WL 2129722, at **11–12 (D. Minn. Mar. 12, 2020), *report and recommendation adopted*, 2020 WL 2128666 (D. Minn. May 5, 2020), *aff'd*, No. 20-2117, 2020 WL 7055820 (8th Cir. Oct. 26, 2020) (listing factors to consider in deciding whether to impose a filing restriction). This is Pederson's third case arising from the same core operative facts. Five judges in this District—Magistrate Judge Becky Thorson and District Judge Wilhelmina Wright in *Pederson I*, Magistrate Judge David Schultz and District Judge Joan Ericksen in *Pederson II*, and me in *Pederson III*—and two Eighth Circuit panels have concluded that Pederson failed to allege facts showing the presence of personal jurisdiction in this District over any of the defendants named in any of these cases. *See Pederson III*, 2022 WL 2163776, at **1–4, 6–8 (summarizing the three cases and analyzing the merits of personal jurisdiction in this case). Pederson has identified no purpose this lawsuit might serve that he did not attempt to achieve through his previous two suits. His filing of this case flouts the dismissals and affirmances in the prior two suits. These multiple groundless suits have caused substantial expense, here specifically to Rubin, Hsiao, and OPKO Health, and Pederson has shown that he will not relent in his attempt to sue on his claims here in Minnesota.[3]

---

[3]     Pederson's three suits are fewer than the number of suits that have triggered filing restrictions in other cases. *See, e.g.*, *Hansmeier v. MacLaughlin*, No. 21-cv-1167 (JRT/LIB), 2022 WL 748484, at **6–7 (D. Minn. Mar. 11, 2022) (imposing filing restrictions in response to a plaintiff's filing of "at least sixteen duplicative cases"). What Pederson's three cases lack in relative quantity, however, they more than make up for with their expanse and convolution. Pederson's Amended Complaint in this case, for example, is 330 paragraphs long, incorporates 2,212 pages of exhibits, and is quite difficult to follow. ECF No. 26.

The precise scope of the filing restriction deserves particular discussion in view of how Pederson in this case ostensibly evaded the filing restriction imposed in *Pederson II*. In *Pederson II*, Magistrate Judge Schultz recommended, Judge Ericksen accepted, and the Eighth Circuit affirmed (owing to Pederson's waiver) the following restriction: "Plaintiff Lee Michael Pederson is restricted from filing new cases *against Defendants* based on the same or similar allegations as those in this lawsuit *in the District of Minnesota*, unless he is represented by counsel or obtains prior written authorization to file an action from a judicial officer of this District." *Pederson II*, ECF No. 126 at 2 (emphasis added). Pederson side-stepped this restriction in two ways when he commenced this case. First, he brought this case against seven defendants, none of whom was a defendant in *Pederson II*, thus evading *Pederson II*'s restriction forbidding "new cases against Defendants" named in that case. *See Pederson III*, ECF No. 1-1.[4] Second, Pederson filed this case in Minnesota District Court, Hennepin County, thus ostensibly avoiding *Pederson II*'s prohibition on "filing new cases . . . in the District of Minnesota." *Id.*, ECF No. 1.[5]

Re-adopting the *Pederson II* restriction here would risk inviting a fourth suit arising from the same core factual allegations. Pederson in this case has shown the ability to

---

[4]  The defendants in *Pederson II* were Phillip Frost, CoCrystal Pharma, Inc., and Daniel Fischer. *See id.*, ECF No. 1.

[5]  In his Report and Recommendation, Magistrate Judge Schultz noted his willingness to "entertain an appropriate sanctions motion in the event Pederson brings the same lawsuit in state court which Defendants remove to federal court on the basis of diversity jurisdiction." *Pederson II*, ECF No. 115 at 12, n.5. However, the filing restriction ultimately entered in *Pederson II* did not include a provision addressing or anticipating this scenario.

identify participants in the alleged "nationwide securities schemes[,]" *Pederson II*, 2021 WL 6138212, at *1, who he might name as new defendants, and he understands that filing his case in a Minnesota state court arguably gets him around a prohibition on filing an original action in this District. The bottom line is that a broader restriction is warranted, one that accounts for these gaps. For these reasons, then, Pederson will be restricted from prosecuting new cases in this District, regardless of whether the case is filed or removed here, against these Defendants or based on the same nucleus of operative allegations as those in this lawsuit, *Pederson I*, and *Pederson II*, unless he is represented by counsel or obtains prior written authorization to file a case or pursue a removed action from a judicial officer of this District.

C

Whether to impose a monetary sanction in addition to the filing restriction presents a closer call, but I conclude the better answer is that a graduated monetary sanction twice that awarded in *Pederson II*—or $20,000—is reasonably necessary here on top of the filing restriction to deter repetition of Pederson's conduct.[6] Several considerations prompt this monetary sanction.

(1) The filing restriction alone is not likely to deter Pederson. A filing restriction *and* a monetary sanction did not stop Pederson from filing this case. More to the point, Pederson's filing of this case notwithstanding the *Pederson II* filing restriction shows that

---

[6] Properly framed, the precise question is whether the filing restriction alone suffices to deter repetition of Pederson's conduct or comparable conduct by others similarly situated, or whether an additional monetary sanction is reasonably necessary to achieve that result. Fed. R. Civ. P. 11(c)(4) and Advisory Committee Notes (1993 Amendments).

Pederson will identify and seek to exploit what he believes might be gaps in a filing restriction. More deterrence is warranted. One might fairly ask whether Pederson's potential ability to exploit filing-restriction loopholes is eliminated because the filing restriction here is broader than that entered in *Pederson II*. The challenge, as noted earlier, is that a filing restriction must be narrowly tailored. *In re Pointer*, 345 Fed. App'x at 205. Here, narrow tailoring requires restricting Pederson, not from filing or prosecuting *any* cases in this District, but from prosecuting cases against these Defendants or arising out of the same factual nucleus as this case and the prior two, what Pederson calls the "Frost gang" fraud. *See* ECF No. 58 at 6. In other words, the need for narrow tailoring inevitably leaves some play in the joints. And based on my experience with Pederson and this case, I conclude there is a reasonable probability that, if it were the only sanction, Pederson would attempt to evade this filing restriction by filing a fourth case while claiming to have identified new theories and defendants to support it that fall outside the nucleus of allegations supporting his first three cases.

(2) Analysis of the relevant factors, *see* Fed. R. Civ. P. 11(c)(4) and Advisory Committee Notes (1993 Amendments) (identifying factors that may be considered), leads me to conclude that $20,000 represents a reasonable sanction that, combined with the filing restriction, is "limited to what suffices to deter repetition of the conduct or comparable conduct[,]" Fed. R. Civ. P. 11(c)(4). If *Pederson II*'s $10,000 sanction did not stop Pederson from pursuing this case, then it seems safe to conclude that a higher monetary sanction is appropriate. Pederson's conduct was willful, not negligent. Pederson knew this case was a repeat of *Pederson II* when he brought it. He alleged in his Amended

Complaint that this case is the same as *Pederson II*, both in substance and with respect to his personal-jurisdiction allegations. *See* Am. Compl. ¶ 19.1 [ECF No. 26] ("The bribery of Dan Fisher by the Frost gang comprises the nucleus of operative facts in both *Pederson II* and *Pederson III*."); *see id.* ¶ 47 (same); ECF No. 58 at 6 ("The outcome of the jurisdiction issue in this case is still completely dependent on the outcome of *Pederson II*, which is still pending." (emphasis omitted)). Pederson's conduct here continues a pattern of flouting court orders. For example, Magistrate Judge Schultz admonished Pederson specifically for "attach[ing] 1,193 pages of exhibits" to his *Pederson II* complaint, *see Pederson II*, ECF No. 115 at 10, 11–12, but that admonition did not stop Pederson from supplementing his Amended Complaint in this case with 2,212 pages of exhibits, Am. Compl. ¶ 87.1. Because Pederson's Rule 11 violations occurred in his commencement and prosecution of this case, the violations infected the entire case and not just some discrete aspect of it. It makes things worse that Pederson is a lawyer.[7]

(3) Pederson's arguments against a monetary sanction are not persuasive. Pederson characterizes Rubin, Hsiao, and OPKO Health's defense of the case as "needless" and a waste of time, ECF No. 58 at 3, but this is neither fair nor accurate. Pederson brought this case. Rubin, Hsiao, and OPKO Health were required to respond to it. And their response

---

[7] Pederson's ill-considered tactics continued after entry of the May 10 order. He filed a notice of appeal of that non-final order with the Eighth Circuit. ECF No. 66. Pederson was advised of the impropriety of his attempted appeal, both in an order, ECF No. 68, and in communications from Defendants' counsel, *see* ECF No. 71. Though Pederson agreed initially to withdraw his appeal, he did not, forcing Defendants to incur the expense of filing a motion to dismiss the appeal. *Id.* Defendants' motion to dismiss Pederson's appeal was granted. ECF No. 72.

complied with the Federal Rules of Civil Procedure and achieved the speedy determination of the action. Pederson seems to argue that his claims are bone fide on their merits, but that is not the Rule 11 issue. The Rule 11 issue concerns personal jurisdiction, and Pederson says nothing to address that issue that has not been addressed already. Finally, Pederson's suggestion that his certiorari petition in *Pederson II* leaves room for doubt about the outcome in that case is not persuasive. Owing both to the nature of the case and the issue, the odds the Supreme Court will grant the petition are slim. If the petition is granted, Pederson may file an appropriate motion under Fed. R. Civ. P. 60.

(4) Pederson's factual representation that he "has no assets or money left[,]" ECF No. 58 at 7, ¶ 3, is questionable and an insufficient reason not to impose a monetary sanction. It is true that a party's ability to pay a monetary sanctions order must be considered if that party raises the point. *Landscape Properties, Inc. v. Whisenhunt*, 127 F.3d 678, 685 (8th Cir. 1997). Here, Pederson's responses to legitimate inquiries regarding his financial condition have been incomplete and intransigent. For example, in connection with the *Pederson II* $10,000 sanctions award, Defendants served Pederson with a Demand for Disclosure pursuant to Fed. R. Civ. P. 69 and Minn. Stat. § 550.011. ECF No. 51-1 at 3–12. As relevant here, the statute provides: "The information [as to the nature, amount, identity, and locations of all the debtor's assets, liabilities, and personal earnings] must be provided on a form prescribed by the supreme court, and the information shall be sufficiently detailed to enable the judgment creditor to obtain satisfaction of the judgment by way of execution on nonexempt assets and earnings of the judgment debtor." Minn. Stat. § 550.011. Pederson responded to the Demand with a purported asset list, *see* ECF

11

No. 51-1 at 13, but there are several problems with the list. Pederson did not use the "form prescribed by the supreme court" (which Defendants had provided, *see* ECF No. 51-1 at 8–12). His list appears on a single page, albeit with numbers that seem to correspond to categories on the prescribed form. Pederson's list is obviously incomplete. He did not, for example, provide addresses of banks where he had accounts or respond to questions concerning various categories of property he might own. *Compare* ECF No. 51-1 at 10, 11 *with id.* at 13. Other information Pederson provided voluntarily suggests he was not taking the Demand—or the fact that a judgment had been entered and was being enforced—seriously.[8] Specifically, Pederson added lines numbered 26 and 27, which do not appear on the prescribed form. In item 26, he listed "legal claims" and included "court cases against the Frost gang (Pederson II and Pederson III)" and "SEC whistleblower claims," both with "unknown value." *Id.* at 13. In item 27, he lists "Other assets" of "Psalm 23," "Matthew 6:28," "good and wise friends," and "faith and confidence that the crimes and frauds of the Frost gang will eventually be more completely revealed." *Id.* Strangely, though Pederson declined to catalog other categories of property, he listed owning a specific make and model of shotgun. *Id.* The bottom line is that the content and tenor of Pederson's response raise considerable doubts about his asserted inability to pay a monetary sanction, and it would be a mistake simply to accept Pederson's representation that he lacks assets as a justification for deciding not to award a monetary sanction.

---

[8] Regarding the seriousness of the issue, it's worth noting "that failure to complete the form and mail it to the judgment creditor within ten days after service of the order may result in a citation for civil contempt of court." Minn. Stat. § 550.011.

(5) The information submitted by Defendants' lawyers shows that Defendants reasonably incurred an amount substantially greater than $20,000 for their attorneys' fees and costs.[9] As noted, Defendants claim to have incurred attorneys' fees and costs of $124,670 through the work of two firms, one in Minneapolis and the other in Miami, Florida. *Supra* at 3–4 (citing Third Dixon Decl. ¶ 7 and Miller Decl. ¶ 8). Pederson does not challenge the reasonableness of the hourly rates charged by Defendants' counsel. Regardless, Defendants have submitted adequate evidence and information to show that their Minneapolis attorneys' rates are reasonable. *See* Third Dixon Decl. ¶¶ 4–5. Defendants tie the reasonableness of their higher Miami attorneys' rates to the Miami-area market. Miller Decl. ¶¶ 4–5. The Eighth Circuit has instructed that "a reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated[]" unless "the [party seeking fees] has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) (citing *Avalon Cinema Corp. v. Thompson,* 689 F.2d 137, 140 (8th Cir.1982) (en banc)); *see also Little Rock Sch. Dist. v.*

---

[9] The standards governing review of the attorneys' submissions are well-established. Defendants have the burden to submit evidence supporting their lawyers' claimed rates and the hours worked and to establish that their fees are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 437 (1983). "To calculate attorney's fees, courts typically begin by using the lodestar method, which multiplies the number of hours reasonably expended by reasonable hourly rates. When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019) (cleaned up). Trial-court judges need not "become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

*Arkansas*, 674 F.3d 990, 997–98 (8th Cir. 2012). Even so, reducing the Miami lawyers' rates to, or in the range of, the rates charged by comparably experienced Minneapolis lawyers would make no difference because the total fees and costs incurred by Defendants would remain far greater than the $20,000 monetary sanction imposed here. Defendants claim a combined 244.3 hours of work—95.5 by Fredrikson & Byron, Third Dixon Decl. Ex. 1 [ECF No. 52 at 6], and 148.8 by Akerman, Miller Decl. Ex. 1 [ECF No. 54 at 6, 11, 15, 20, 25, 30, 34]. Described at a high level, this work included reviewing Pederson's voluminous filings, removing the case to federal court, preparing a motion to dismiss Pederson's original Complaint (that was mooted by Pederson's filing of the Amended Complaint), preparing a motion to dismiss Pederson's Amended Complaint, and preparing a motion for sanctions. Pederson raises no challenge to particular time or cost entries. Whatever questions might have been raised concerning overall efficiency or specific entries, a careful review of the time and expense records shows that Defendants' lawyers generally billed reasonable time for reasonably necessary work that far exceeds the value of $20,000.[10] Based on the Minneapolis hourly rates, the claimed hours worked "resulting

---

[10] To be clear (and to show that the time and expense records were reviewed closely), there are scattered exceptions. For example, Akerman's invoices include the following entry dated September 28, 2021: "Correspondence re third-party subpoenas; prepare for hearing on motion to dismiss third-party complaint." Miller Decl. Ex. 1 [ECF No. 54 at 5]. The absence of a third-party complaint in this case suggests this entry was included mistakenly. Both firm's invoices include entries with redactions. Dixon Decl. Ex. 1 [ECF No. 52 at 4]; Miller Decl. Ex. 1 [ECF No. 54 at 4, 27]. Regardless of the redactions' purpose, the absence of a description precludes or at least impedes a determination that the hours worked were reasonable. Finally, without more information, a $126.72 tab for one person's dinner in the Twin Cities area seems unreasonable. *See* Miller Decl. Ex. 1 [ECF No. 54 at 28].

from the violation[s]" of Rule 11 or "incurred for the [sanctions] motion[,]" Fed. R. Civ. P. 11(c)(2), (4), reasonably and substantially exceed a value of $20,000.

II

The next question is whether Pederson has shown cause justifying his failure to timely serve Defendants Kesner, Honig, Brauser, and Keller with process such that he should be given more time to do so. "[U]nder Rule 4(m), if the district court concludes there is good cause for plaintiff's failure to serve within 120 days, it *shall* extend the time for service. If plaintiff fails to show good cause, the court still *may* extend the time for service rather than dismiss the case without prejudice." *Kurka v. Iowa Cnty.*, 628 F.3d 953, 957 (8th Cir. 2010) (cleaned up). "To warrant a discretionary extension, the plaintiff must establish excusable neglect." *Id.* "Good cause is likely shown when the plaintiff's failure to complete service in a timely fashion is a result of the conduct of a third person (typically the process server), the defendant has evaded service or engaged in misleading conduct, the plaintiff has diligently tried to effect service or there are understandable mitigating circumstances, or the plaintiff is proceeding pro se or in forma pauperis." *Peer v. Vilsack*, 563 F. App'x 504, 505 (8th Cir. 2014) (citing *Kurka*, 628 F.3d at 957); *see Kurka*, 628 F.3d at 957 (discussing that "Rule 4(m) does not define good cause, and courts have not given conclusive meaning to the phrase," listing factors to be considered, and stating that "[w]hether or not [good cause] has been satisfied is largely dependent upon the facts of each individual case"). To show good cause in this context, a litigant must identify "some reasonable basis for noncompliance with the rules." *Peer*, 563 F. App'x at 505 (quoting *Kurka*, 628 F.3d at 957). Regarding excusable neglect, factors to consider "include: the

15

possibility of prejudice to the defendant, the length of the delay and the potential impact on judicial proceedings, the reason for the delay (whether the delay was within the party's reasonable control), and whether the party acted in good faith." *Id.* at 506 (citing *Kurka*, 628 F.3d at 958). "The reason for the delay is the key factor." *Id.* (citing *Kurka*, 628 F.3d at 958).

Here, Pederson's submissions show the following facts regarding service with respect to the unserved Defendants: Pederson mailed the original Complaint and waiver of service forms to each of these Defendants at their home addresses on September 13, 2021, but none of them responded or waived service. ECF No. 56 ¶¶ 5–7; Pederson Decl. Exs. 2–5 [ECF Nos. 57-2–57-5]. Months later, on December 18, after filing an Amended Complaint, Pederson emailed attorneys who represented Kesner, Honig, and Brauser in other litigation. ECF No. 56 ¶¶ 13–18; Pederson Decl. Exs. 6–11 [ECF Nos. 57-6–57-11]. Those emails each included, among other documents, a copy of the Amended Complaint, a request for waiver of service, and a cover letter. ECF No. 56 ¶¶ 13–18; Pederson Decl. Exs. 6–11. The cover letters each stated that (1) the relevant Defendant, having not provided an executed waiver of service for Pederson's original Complaint, would be responsible for expenses incurred in making service; (2) Pederson was emailing the attorney "[r]ather than retaining a process server to try to track [each unserved Defendant] down"; and (3) Pederson would request the court to order the United States Marshal to serve that Defendant under Federal Rule of Civil Procedure 4(c)(3) if that Defendant "[did] not appear in the case within a reasonable period of time." ECF No. 56 ¶¶ 13–18; Pederson Decl. Exs. 6–11. Separately, Pederson mailed Keller a letter to Keller's residential address

16

on December 20, 2021 with content similar to the other letters regarding service, though it does not appear that Pederson sent a copy of the Amended Complaint or a request for waiver of service of that pleading with his letter to Keller. ECF No. 56 ¶ 19; Pederson Decl. Ex. 12 [ECF No. 56-12]. Pederson and Keller exchanged emails, discussing settlement and other matters, until at least February 11, 2022. ECF No. 56 ¶¶ 20–22; Pederson Decl. Exs. 13–15 [ECF No. 56-13–57-15]. Pederson says he sent a third request to appear to these Defendants on February 2, 2022. ECF No. 56 ¶ 20.1.

These facts show neither good cause nor excusable neglect. Pederson never has seriously attempted to serve these Defendants. He sent most of them, though it appears not Keller, waiver of service forms with the Amended Complaint via lawyers who represented the unserved Defendants in other cases. But a year and a half after this case began, that's it, and that's only an attempt to have these Defendants *waive* service: Pederson never attempted *service*, nor requested to have these Defendants served by a United States Marshal or other person under Rule 4(c)(3). He did not do either of those things even in the months after being ordered to show good cause—that is, even after being alerted to the imminent possibility that his claims against the unserved Defendants would be dismissed because of the service issue. Pederson has therefore not acted diligently, and the long delay was within his reasonable control.

Pederson's arguments on this question are not persuasive. It is true that Pederson is pro se, *see Kurka*, 628 F.3d at 957, but he is an attorney, and his submissions show that he knows both that service is necessary and how to accomplish it. Pederson says that he has limited financial resources to effect service and that he "did not want to burden this Court

17

with a request to have the U.S. Marshals execute service." ECF No. 56 ¶ 31.  Leave aside doubts regarding Pederson's assertion that he lacks financial resources.  Pro se litigants with limited means (and without law licenses or degrees) manage to serve process all the time.  Given the manner in which he has litigated his three cases, Pederson's concerns about not burdening the District cannot be taken seriously.  Pederson represents that he "expected the Non-appearing Defendants to try to avoid service of process."  *Id.* ¶ 11.  It's not clear how this concern might show good cause or excusable neglect.  Pederson identifies no evidence showing that any unserved Defendant tried to avoid it, and Pederson does not explain how this concern changed his approach to service of process or his ability to serve any Defendant.  Finally, Pederson suggests his failure to serve should be justified or excused because "Defendants have all had full notice and opportunity to appear in the proceedings in this case."  *Id.* ¶ 32; *see also id.* ¶ 23.  But the law is clear that actual notice is not a substitute for proper service.  *See Sieg v. Karnes*, 693 F.2d 803, 807 (8th Cir. 1982) ("[A] federal court is without jurisdiction to render personal judgment against a defendant if service of process is not made in accordance with applicable federal or state statutory requirements.  This principle remains true despite any actual notice a defendant may have of the lawsuit.").  For all these reasons, no extension of time for service is warranted, and the claims against the unserved Defendants will be dismissed without prejudice pursuant to Rule 4(m).

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiff Lee Michael Pederson is restricted from prosecuting new cases in this District, regardless of whether the case is filed or removed here, against Defendants named in this case or based on the same nucleus of operative allegations as those in this lawsuit, *Pederson I*, and *Pederson II*, unless he is represented by counsel or obtains prior written authorization to file a case or to prosecute a removed action from a judicial officer of this District.

2. Plaintiff Lee Michael Pederson shall pay $20,000 to Defendants Steven Rubin, Jane Hsiao, and OPKO Health, Inc. as a sanction pursuant to Rule 11 of the Federal Rules of Civil Procedure.

3. The claims against Defendants Harvey Kesner, Barry Honig, Michael Brauser, and Brian Keller are **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 6, 2022           s/ Eric C. Tostrud
                                   Eric C. Tostrud
                                   United States District Court